# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DEJUAN PARKER, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:11-cv-0332 |
| ) | Judge Aleta A. Trauger |
| v. ) | |
| ) | |
| JOSHUA ROBERTSON, JAIME RICE, ) | |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON COUNTY, ) | |
| TENNESSEE, and JOHN DOES, ) | |
| ) | |
| Defendant, ) | |

## MEMORANDUM

Defendants Joshua Robertson and Jaime Rice have a filed a Motion for Summary Judgment (Docket No. 41), to which the plaintiff has filed a Response in opposition (Docket No. 48), and the moving defendants have filed a Reply (Docket No. 52). For the reasons stated herein, the moving defendants' motion will be granted in part and denied in part, the plaintiff's federal malicious prosecution claims will be dismissed, and the plaintiff's remaining state law malicious prosecution claims will proceed to trial.

## BACKGROUND

### I. Facts

On February 24, 2010, the Metropolitan Nashville Police Department ("MNPD") conducted a "reverse prostitution" sting at the Savoy Motel on Dickerson Road in Nashville, Tennessee. As part of the sting, Detective Rice (who is female) posed undercover as a prostitute. Officer Robertson also participated in the operation.

1

The plaintiff, DeJuan Parker, lives in a neighborhood near the motel. On the night of the MNPD sting, Parker was parked in the parking lot of a store adjoining the motel. Detective Rice approached Parker's car and knocked on the car window. Crediting Parker's version of events, Parker rolled down his window and asked the woman (Rice) what she wanted. Rice asked Parker if he could help her make some money. Parker asked what she meant, and Rice responded that she needed twenty dollars. Parker said he had twenty dollars but asked Rice what her point was. The woman told Parker that they could discuss the issue further in her motel room. Parker categorically stated that he was not interested in going to a motel with her and ended the conversation. Rice walked away. Despite the fact that Parker had not accepted her solicitations, Detective Rice signaled to nearby MNPD officers that a crime had been consummated.

MNPD officers approached Parker's vehicle, arrested him, handcuffed him, told him that he was under arrest, and walked him to a processing room in the back of the motel. Officer Robertson took Parker's picture and asked him a series of biographical questions, which Officer Robertson used to fill out the misdemeanor citation that he gave to Parker for (allegedly) patronizing prostitution. The citation included a narrative drafted by Officer Robertson describing the interaction between Parker and Detective Rice, which Officer Robertson drafted himself without assistance from any other officer. According to Parker, Officer Robertson's citation contained false statements supporting the charge. After being processed and handed his citation, Parker was released (less than an hour after he had been removed from his car by the police), and he was free to leave. Parker was not required to post bond or bail in order to be released.

Following his arrest, the MNPD issued a press release, publicizing Parker's arrest as part of the prostitution sting, and posted Parker's picture on the city's website. Local news channels picked up the story and broadcast it. At the time, Parker had a wife and two children, worked as a teacher in the Metro Nashville Public Schools ("MNPS") at the Joelton Middle School, volunteered for the Big Brothers of Nashville Program, played as a drummer for his local church, and was pursuing a doctorate degree. On February 26, 2010 (two days after his arrest), the MNPS placed Parker on administrative leave pending review. On March 31, 2010, the MNPS placed him on administrative leave without pay. Thereafter, the MNPS did not renew Parker's contract and terminated him.

On April 15, 2010, Parker appeared before the Davidson County General Sessions Court for a preliminary hearing concerning the criminal citation. The hearing lasted no more than fifteen minutes.[1] At the preliminary hearing, Detective Rice testified pursuant to a subpoena. Parker contends that Detective Rice gave false testimony about her recollection of events during the incident at issue.[2] The General Sessions Judge determined that there was no probable cause for Parker's arrest and dismissed the charge. Officer Robertson did not testify at the hearing or speak to the prosecutor about the case.

Parker incurred legal fees and other fees attempting to defend himself in hearings before school administrators and in his criminal case. Due to the pervasiveness of the news story

---

[1] Parker likely arrived at the courthouse around 8:00 a.m. and remained there until approximately 11:30 a.m., although his actual hearing only lasted about 15 minutes. (Docket No. 43, Ex. 6, Tr. of Deposition of R. Price Nimmo, at 20:18-21:7.)

[2] From the deposition excerpts in the record, it appears that Detective Rice, when on the stand at the preliminary hearing, claimed to have forgotten most of the details of her interaction with Parker. Parker claims that Detective Rice actually remembered the details of the event.

concerning his alleged solicitation of a prostitute, he lost his job, could not find equivalent employment in Nashville, had his house foreclosed upon, and was forced to relocate to Memphis.

## II. **Procedural History**

On April 5, 2011, more than one year after his arrest but less than one year from the General Sessions preliminary hearing, Parker filed a Complaint against Detective Rice, Officer Robertson, the Metropolitan Government of Nashville and Davidson County ("Metro Nashville"), and unnamed "John Doe" officers. (Docket No. 1.) Parker asserted three categories of claims: (1) federal claims under § 1983 for false arrest and malicious prosecution, (2) Tennessee state law claims for false arrest and malicious prosecution, and (3) a state law claim for intentional infliction of emotional distress. After the defendants filed a (partial) Motion for Judgment on the Pleadings, Parker conceded the following points:

- His federal and state false arrest claims, as well his state law intentional infliction of emotional distress claims, were time-barred because they were filed outside Tennessee's one-year statute of limitations and because the claims had accrued on February 24, 2010, the date of his arrest. *See Irick v. Ray*, 628 F.3d 787, 788 (6th Cir. 2010) (citing Tenn. Code Ann. § 28-3-104(a)(3)); *Fox v. Desoto*, 489 F.3d 227, 233 (6th Cir. 2007).

- Metro Nashville was immune from Parker's claims and should be dismissed.

Accordingly, the court dismissed Metro Nashville from the case and dismissed all claims against the remaining individual defendants other than the federal and state malicious prosecution claims. (Docket No. 19.)

4

On May 14, 2014, the remaining individual defendants filed the instant Motion for Summary Judgment on the remaining federal and state law malicious prosecution claims.[3] The defendants contend that Parker's remaining federal claims are, in essence, time-barred false arrest claims, not malicious prosecution claims. The defendants also argue that, even if the court were to treat the federal claims as timely malicious prosecution claims, Parker cannot meet certain requisite elements of a § 1983 malicious prosecution claim, Parker cannot maintain a § 1983 malicious prosecution claim premised on a violation of the Fourteenth Amendment, the defendants are entitled to qualified immunity, or (at a minimum) Detective Rice is entitled to absolute immunity for her testimony at the preliminary hearing. Finally, the defendants argue that, because Parker's § 1983 malicious prosecution claims should be dismissed, the court should decline to exercise supplemental jurisdiction over Parker's state law malicious prosecution claims.

Parker's response brief inadequately addresses many of the points raised by the defendants. Much of Parker's brief seeks to show that there was no probable cause for the underlying arrest, a point that the defendants do not dispute for purposes of their motion. Parker also failed to respond to the defendants' Concise Statement of Material Facts (Docket No. 43), which the court therefore accepts as true under Fed. R. Civ. P. 56(e) and Local Rule 56.01(g).[4] Parker did not respond to the defendants' argument that he cannot maintain his malicious

---

[3] Parker never prosecuted claims against the "John Doe" defendants. He does not contest that the John Doe claims should be dismissed. The court's analysis therefore relates only to claims against Officer Robertson and Detective Rice.

[4] Parker also filed his own statement of proposed facts (Docket No. 50), which the court has considered. Those facts, most of which are immaterial, do not conflict with the defendants' stated facts.

prosecution claims under the Fourteenth Amendment, which the court construes as abandonment of any right to proceed with a claim under the Fourteenth Amendment.[5]

The court has closely scrutinized the defendants' Memorandum and Reply concerning its motion. The defendants contend that, if it dismisses the federal claims, the court should exercise its discretion to dismiss the supplemental state law malicious prosecution claims. However, the defendants have not expressly argued that the *state law* malicious prosecution claims should be dismissed on the merits. The defendants' brief argues extensively about federal law relating to § 1983 claims, which are necessarily premised on alleged violations of the federal Constitution. However, the defendants do not reference Tennessee law relating to the tort of malicious prosecution, let alone how it might apply to the facts of the case. Under the circumstances, the court construes the defendants as seeking dismissal on the merits only as to the *federal* malicious

---

[5] As noted herein, it may be that the circumstances of this case could have given rise to some type of § 1983 claim premised on constitutional rights *other* than those protected by the Fourth Amendment. However, Parker did not cite the Fourteenth Amendment in his Complaint and did not respond to the defendants' contention that he is asserting only malicious prosecution claims premised on the Fourth Amendment. The court notes that, in *Gregory v. City of Louisville*, 444 F.3d 725, 748 n.10 (6th Cir. 2006) (referencing *Albright v. Oliver*, 510 U.S. 266 (1994)), the Sixth Circuit speculated "whether some claims formerly brought under the 'malicious prosecution' umbrella might allege an injury distinct from Fourth Amendment protections . . . and survive as a due process violation in the post-*Albright* world." However, the Sixth Circuit stated that, "[u]ntil presented with factual circumstances meriting an analysis beyond the Fourth Amendment, we decline to reach the question about whether a non-Fourth Amendment 'malicious prosecution' cause of action survives under § 1983 after *Albright*." *Id.* At any rate, the court held that a plaintiff asserting a malicious prosecution claim "must pursue relief under the appropriate constitutional guarantee, and the Court must apply the appropriate legal standard." *Id.* at 749. "[T]he subset of malicious prosecution claims which allege continued detention without probable cause must be pursued and analyzed under the Fourth Amendment." *Id.* at 750.

prosecution claims, but not as to the state law claims.[6] The court's opinion therefore concerns only (1) the merits of the federal malicious prosecution claims (but not the state law malicious prosecution claims), and (2) whether, in light of the court's holding that the federal claims must be dismissed, the court should, in its discretion, continue to exercise jurisdiction over the remaining state law malicious prosecution claims.

## **RULE 56 STANDARD**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[6] The court notes that the elements of Tennessee common law malicious prosecution claims (and the construction of those elements by Tennessee courts) are distinct from the elements of federal malicious prosecution claims premised on the Fourth Amendment. *See, e.g.*, *Ross. v. Gunter*, 1986 WL 14224, *3 (Tenn. Ct. App. Dec. 17, 1986) ("[V]alid process is not a prerequisite for a claim for malicious prosecution. . . . [W]hen one maliciously puts the machinery of the court into operation whether the proceedings be irregular or void can make little difference, as the result is the same."); *see also Meeks v. Gasaway*, 2013 WL 6908942, at *4 (Tenn. Ct. App. Dec. 30, 2013) (stating elements of claim). In this opinion, the court makes no determination concerning the merits of Parker's Tennessee malicious prosecution claims or their timeliness, neither of which are challenged here.

7

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

### I. § 1983 Malicious Prosecution Claims

#### A. Malicious Prosecution Elements

The Sixth Circuit recognizes a constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). To succeed on a claim for malicious prosecution, a plaintiff must prove four elements:

(1) "[A] criminal prosecution was initiated against the plaintiff and [] the defendant made, influenced, or participated in the decision to prosecute;"

(2) There was a lack of probable cause for the criminal prosecution;

(3) "[A]s a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure;" and

(4) "[T]he criminal proceeding must have been resolved in the plaintiff's favor."

*Id.* (internal citations, quotations marks, and brackets omitted). Notwithstanding the name of the tort, the plaintiff need not show "malice" to prevail on a malicious prosecution claim. *Id.*

8

The tort of malicious prosecution is "entirely distinct" from the tort of false arrest. *Id.* It "remedies detention accompanied not by the absence of legal process, but by *wrongful institution of legal process*." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (emphasis in original)); *see also Gregory*, 444 F.3d at 750. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.*

Here, for purposes of their motion, the defendants concede that there was a lack of probable cause for Parker's arrest. The defendants challenge, in one form or another, the remaining elements. They contend that there was no "prosecution" through "legal process" against Parker in the first place, that he did not suffer a deprivation of liberty apart from his initial seizure, that Officer Robertson did not "make, influence, or participate" in the decision to prosecute, that both officers are entitled to qualified immunity, and that Detective Rice is entitled to absolute judicial immunity with respect to her testimony (regardless of its veracity).

### B. Deprivation of Liberty

To make out a malicious prosecution claim, Parker must show that, "as a consequence of a legal proceeding," he "suffered a deprivation of liberty" under the Fourth Amendment, "apart from the initial seizure." *Sykes*, 625 F.3d at 308. Thus, traditionally, to bring a claim for malicious prosecution, a defendant must be detained before trial or otherwise restricted in his liberty, such as through being subject to bail or bond. *See, e.g., Amine v. King*, 2011 WL 4387229, at *12 (E.D. Mich. Sept. 21, 2011) (released on bond); *Thomas v. Bedford Cnty.*, 2011 WL 833626, at *7 (E.D. Tenn. Mar. 4, 2011) (plaintiff jailed and had to post bail to be released).

9

Here, Parker contends that he was subject to "legal process" because he was ordered to appear in court to answer the charge against him. (Docket No. 49 at p. 13.) He also argues that he was subject to a deprivation of liberty because, under penalty of severe punishment, he was obligated to appear in Tennessee court to defend the charge and was not "free to leave" the courtroom. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Although not cited in his brief, Parker's position is similar to a position espoused by Justice Ginsburg in her concurrence in *Albright v. Oliver*, 510 U.S. 266 (1994). There, the Supreme Court was asked to determine when the statute of limitations began running on a false arrest claim, where the charges were later dismissed. In her concurrence, Justice Ginsburg suggested that, even without formal detention, prosecution alone can constitute a continuing "seizure" under the Fourth Amendment because the individual charged with a crime is bound to appear in court and generally must remain in the jurisdiction during the pendency of the case. *Fisher v. Dodson*, 451 F. App'x 500, 502 (6th Cir. 2011) (citing *Albright*, 510 U.S. at 279). Furthermore, describing circumstances that mirror Parker's circumstances here, Ginsburg noted that "[p]ending prosecution, his [the accused's] employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense." *Id.* at 279. In Justice Ginsburg's view, the "seizure" is therefore continuing and should delay the running of the statute of limitations on a false arrest claim beyond the date of arrest. *Albright*, 510 U.S. at 280.[7] Thus, in Justice Ginsburg's view, analyzing the police

---

[7] "Once it is recognized, however, that Albright remained effectively 'seized' for trial so long as the prosecution against him remained pending, and that [officer] Oliver's testimony at the preliminary hearing, if deliberately misleading, violated the Fourth Amendment by perpetuating the seizure, then the limitations period should have a different trigger. The time to file the § 1983 suit should begin to run not at the start, but at the end of the episode in suit, *i.e.*, upon dismissal of the criminal charges against Albright." *Albright*, 510 U.S. at 280.

officer's role as a "malicious prosecution" claim was "anomalous," because "[t]he principal player in carrying out a prosecution . . . is not police officer but prosecutor." *Id.* at 279 n.5.

In multiple cases, the Sixth Circuit has acknowledged Justice Ginsburg's concurrence in *Albright*, which the Sixth Circuit has characterized as articulating a "continuing seizure" doctrine relative to a false arrest claim. *See, e.g.*, *Fisher*, 451 F. App'x 502. However, the Sixth Circuit has never adopted the doctrine or otherwise addressed its validity. *See Johnson*, 310 F.3d at 492 ("[W]e have not yet explicitly addressed the 'continuing seizure' doctrine.") Here, Parker has not identified any case holding that the requirement to appear in court, standing alone, constitutes a "continuing seizure" or, for that matter, a separate "seizure" for Fourth Amendment purposes. To the contrary, the First Circuit has explicitly found that being obligated to appear in court or to answer a summons does not constitute a "seizure" (*see Nieves v. McSweeney*, 241 F.3d 46, 56-67 (1st Cir. 2001); *Britton v. Maloney*, 196 F.3d 24, 29-30 (1st Cir. 1999)), while other circuits have found that a seizure occurred because the defendant at issue was subject to pretrial conditions that deprived him of certain liberties. *See, e.g., Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (judicial order preventing defendant from leaving state and directive to attend court appointments constituted a seizure); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (pretrial interstate travel restrictions and mandatory court attendance constituted a seizure).

The defendants cite several district court cases within the Sixth Circuit in which courts found that defendants did not show a "deprivation of liberty" subsequent to their arrest, notwithstanding the fact that the government pursued the charges until they were dismissed. *See, e.g.*, *Rogers v. O'Donnell*, 2012 WL 1831242, at *2-*3 (E.D. Ky. May 18, 2012 (malicious prosecution claim failed because "plaintiffs were not arrested or incarcerated during the criminal proceedings against them"); *Billock v. Kuivila*, 2013 WL 591988, at *6 (N.D. Ohio Feb. 14,

2013) ("Service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation," and plaintiff did not allege that "he was required to post bond, that his travel was restricted, or that any other restriction was placed on him"); *Hopkins v. Sellers*, 2011 WL 2173859, at *9-*10 (E.D. Tenn. June 2, 2011) (no deprivation of liberty, where plaintiff was issued summons and required to appear at arraignment hearing); *see also Garrett v. Stanton*, 2009 WL 4258135, at *7 n.17 (N.D. Ala. Nov. 19, 2009) (collecting cases). By way of contrast, the defendants cite several cases in which courts found a deprivation of liberty, where the plaintiff was subject to specific restrictions post-arrest other than simply the obligation to appear in court to answer the charges in a relatively short time frame, such as being jailed, obligated to post bond, or required to wait years to have charges resolved. *See, e,g.*, *Thomas*, 2011 WL 833626, at *7 (plaintiff was jailed and had to post bail to be released); *Bacon v. Patera*, 772 F.2d 259, 265 (6th Cir. 1985) (plaintiff required to post bond); *Phat's Bar & Grill & Louisville Jefferson Cnty. Metro.*, 918 F. Supp. 2d 654 (W.D. Ky. 2013) (deprivation of liberty, where prosecutors waited two years to proceed on obstruction of justice charges); *see also* Docket No. 42 at pp. 11-12 (collecting cases).

Here, Parker has not identified *any* liberty restrictions between the date of his arrest and the date of the preliminary hearing, other than his obligation to appear for the hearing itself. Thus, Parker has not provided any evidence that he suffered a separate deprivation of liberty as a matter of fact, nor has Parker provided the court with any caselaw showing that the court should treat his obligation to appear in court as a separate "seizure" for purposes of a malicious prosecution claim. Parker suggests, based on the text of the Fourth Amendment, that the Fourth Amendment does not require a "seizure" apart from the initial seizure to support a malicious prosecution claim. To the extent he is asserting (with citation to legal authority) his

disagreement with the *Sykes* formulation, the argument is not persuasive, as this court is bound to apply *Sykes*, a recent published case.[8]

In sum, the defendants are entitled to summary judgment on the § 1983 malicious prosecution claims because Parker cannot meet the second element of the *Sykes* test, which requires him to show that, as a consequence of a legal proceeding, he suffered a deprivation of liberty under the Fourth Amendment apart from his initial seizure.

### C. Finding of Probable Cause

To show that a testifying officer was responsible for commencing a criminal proceeding for purposes of a malicious prosecution claim, a plaintiff must present evidence that the officer "(1) stated a deliberate falsehood or showed reckless disregard for the truth [at the hearing] and (2) that the allegedly false or omitted information was material to the [court's] finding of probable cause." *Sykes*, 625 F.3d at 312 (quoting *Gregory*, 444 F.3d at 758). Here, this basis for liability does not apply because there was no finding of probable cause, which is a necessary predicate for Parker's Fourth Amendment malicious prosecution claims.[9] Thus, the federal malicious prosecutions claims against both defendants fail for this reason, as well.

### D. Absolute Immunity (Detective Rice)

---

[8] Moreover, even if the court were inclined to adopt the "continuing seizure" doctrine, it would only have delayed accrual of Parker's false arrest claims. Here, Parker did not (and does not) argue that his claims might have accrued inside the one-year statute of limitations based on a "continuing seizure;" instead, earlier in the litigation, Parker conceded that his false arrest claims accrued on the date of his arrest and were, therefore, untimely. The court makes no findings as to whether the legal basis for Parker's earlier concession was correct.

[9] The Sixth Circuit has held that, even where an officer presents false information to a magistrate, a malicious prosecution claim is not actionable if the state court did not rely on that false information in making a probable cause determination. *See Molnar v. Care House*, 359 F. App'x 623, 627 (6th Cir. 2009).

13

"It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)). This immunity applies "no matter how egregious or perjurious" the testimony. *Id*. This absolute immunity extends to an officer's allegedly false testimony at a preliminary hearing. *See Thurmond v. Cnty. of Wayne*, 447 F. App'x 643, 653 (6th Cir. 2001). Thus, Detective Rice is entitled to absolute immunity from liability for her testimony at the preliminary hearing. *See id.* Although this immunity would not extend to "any nontestimonial or pre/post-testimonial acts," *Spurlock*, 167 F.3d at 1001-04, Parker has not produced evidence of any post-testimonial acts by Detective Rice other than the fact that she testified at the preliminary hearing. Parker's brief does not address the absolute immunity issue. The court finds that, even if Parker's § 1983 claim against Detective Rice did not fail for the independent reasons stated above, Detective Rice is entitled to absolute immunity relative to her preliminary hearing testimony.[10]

### E. No Decision to Prosecute (Officer Robertson)

---

[10] As other district courts have acknowledged, there is tension between authorizing a malicious prosecution tort for "participating in" or "influencing" an accused prosecution and, at the same time, providing absolute immunity to a witness who "influences" the proceedings by providing perjurious testimony in an effort to procure a finding of probable cause. *See, e.g.*, *Carter v. Porter*, 2011 WL 778408, at *6, *6 n.6 (E.D. Ky. Mar. 1, 2011); *Garrett*, 2009 WL 4258135, at *8 n.23 (noting that the absolute immunity rule "creates the somewhat anomalous result that a law enforcement officer who seeks to obtain a warrant by falsely testifying before a grand jury is entitled to absolute immunity, while one who does so via false affidavit submitted to a judge is not"). In her concurrence in *Albright*, Justice Ginsburg acknowledged that treating an officer's conduct following arrest as a "malicious prosecution" claim – which she believed was better characterized as a species of false arrest claim – "raises serious questions about whether the police officer would be entitled to share the prosecutor's absolutely immunity." *Id.* at 279. This court expresses no opinion concerning this inherent tension, an issue that the parties have not raised here.

An officer cannot be held liable for malicious prosecution when he did not make the decision to prosecute the accused. *Skousen v. Brighton*, 305 F.3d 520, 529 (6th Cir. 2002); *see also Sykes*, at 308-09 ("[T]he officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating."). Here, it is undisputed that Officer Robertson neither testified nor spoke to the prosecutor about the case. Also, Parker has not shown that the prosecutor at the preliminary hearing relied on, or even possessed, Officer Robertson's citation. Thus, Officer Robertson did not "make, influence, or participate in the decision to prosecute" Parker for soliciting prostitution. *See Halasah v. City of Kirtland, Ohio*, 2014 WL 3792596, at *6 (6th Cir. 2014) (officer could not be held liable for malicious prosecution, where officer completed incident report and forwarded it to prosecutor, who made independent decision to prosecute); *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (claim failed, where plaintiff "present[ed] no evidence suggesting that defendants conspired with, influenced, or even participated in, [the prosecutor's] decision to bring charges against [the plaintiff]"); *D'Angelo v. Clinton Twp.*, 2011 WL 4888904, at *6-*7 (E.D. Mich. Oct. 13, 2011) (finding that creating police report and being listed as complaining witness were insufficient, standing alone, to support malicious prosecution claim); *Hollis v. Bullard*, 2011 WL 5184228, at *5 (E.D. Mich. Nov. 1, 2011) (participation element not satisfied, because, "other than [] presumably providing his police report to the prosecutor and being identified as the complaining witness, Plaintiff produces no evidence that [the officer] actually conferred with the prosecutor in deciding to prosecute plaintiff); *Webb v. Lucas*, 2013 WL 1303776, at *18 (N.D. Ohio Mar. 28, 2013) (even if officer tampered with recordings, malicious prosecution claim failed because no evidence grand jury relied on the recordings in making a probable cause determination); *Buckner v. Rini*, 2013 WL 1720831, at *4 (E.D. Mich. Apr. 22, 2013) (forwarding police report insufficient).

Thus, Parker's malicious prosecution claims against Officer Robertson also fail for this independent reason.

### F. Remaining Issues

The defendants have raised several other grounds for dismissal of the federal malicious prosecution claims, including claims of qualified immunity. In light of the court's findings that Parker's claims fail for the aforementioned reasons, the court declines to address the defendants' other asserted grounds for dismissal of the federal claims.[11]

## II. Supplemental Jurisdiction

Having determined that Parker's federal malicious prosecution claims fail, the remaining issue is whether the court should continue to exercise supplemental jurisdiction over the state law claims. Under 28 U.S.C. § 1367, federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." Section 1367 provides further that a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "The district court should consider such factors as comity, judicial economy, convenience, and fairness in deciding whether to exercise supplemental jurisdiction over pendent state law claims, as well as the avoidance of unnecessarily deciding state law." *Fossyl v. Milligan*, 317 F. App'x 467, 473 (6th Cir. 2009). If the balance of these factors indicates that a case properly belongs in state court, as when the

---

[11] On a final note, the court recognizes that, relative to Parker's federal claims, the result is unfortunate and seemingly unfair to Parker, particularly as to the allegedly perjurious testimony by Detective Rice at the preliminary hearing. Nevertheless, this result was avoidable: Parker could have avoided the dismissal of his federal claims by filing his lawsuit within one year of his arrest, thereby preserving his false arrest claims and the right to recover for injuries proximately caused by that arrest, which may have included his suspension and ultimate termination by MNPS for the (allegedly) false criminal charge.

federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here, neither party has meaningfully addressed how any of the relevant factors apply to the circumstances of this case. Be that as it may, on balance, the factors favor the court's continuing exercise of jurisdiction. In terms of comity, the court acknowledges that, as a general matter, it is preferable for the court to avoid "unnecessary resolution of state law issues." *See DiPiero*, 180 F.3d at 790. However, the other factors strongly weigh in favor of exercising jurisdiction and make it clear that resolving the state law issues is necessary under the circumstances. This case has been pending since April 2011, discovery has been complete, the court has already addressed multiple dispositive motions (including the instant motion), and trial is set for October 7, 2014 (just over two months from the date of this order). Thus, the court is familiar with the facts of the case, the court has invested substantial resources overseeing the case, and it is ripe for trial. It would be wasteful (for both the court and the parties) and inconvenient to force Parker to refile the case in state court and relitigate the state law claims. Furthermore, given the age of this case, dismissing the claims could be unfairly prejudicial to Parker, whose state law malicious prosecution claims might now be time-barred (assuming they were not already time-barred). Finally, the defendants do not contend that the case presents novel or unresolved issues of state law, which otherwise could favor dismissal. For all of these reasons, the court will continue to exercise supplemental jurisdiction over Parker's state law claims. *See Fossyl*, 317 F. App'x at 473-74; *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004); *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287-88 (6th Cir. 1992); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412-13 (6th Cir. 1991).

## CONCLUSION

The defendants' Motion for Summary Judgment will be granted in part and denied in part. Parker's federal malicious prosecution claims will be dismissed. Parker's state law malicious prosecution claims, which are the only remaining claims in the case, will proceed to trial.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge